CHARLES WESTON, as Executor, etc., of ABIJAH WESTON, Deceased, Respondent, *v.* CITIZENS' NATIONAL BANK OF CORRY, PA., Appellant.

*Vacation of a judgment entered by mistake against one of several defendants jointly liable — jurisdiction of the court to vacate the judgment without notice to the other joint debtors — the entry of such a judgment releases the other joint debtors.*

Courts have always control over their own proceedings, and, where there is no express prohibition, may deal with them so that what is just and right may be reached.

The court has power, independent of statute, to modify, vacate and set aside its orders and judgments, and may exercise it in behalf of one in whose favor the order or judgment was entered.

Where there are two classes of defendants in an action, those belonging to one of such classes being jointly liable and those in the other class being severally liable, if the plaintiff's attorney, when entering judgment against the defendants severally liable who have made default, by mistake and inadvertence enters judgment against one of the defendants jointly liable, who was also in default, the court has power to relieve the plaintiff from such mistake by vacating the judgment as to the defendant jointly liable.

The fact that the order vacating the judgment as to such joint obligor was made without notice to the other joint obligors is merely an irregularity, not affecting the jurisdiction of the court to vacate the judgment, and is not available to the other joint obligors in a subsequent action brought by them to enjoin the prosecution of the former action on the ground that the court had no power to vacate the judgment entered in the former action against the joint obligor who had made default.

*Semble*, that if the plaintiff in an action brought upon a joint obligation, deliberately and intentionally enters judgment against one of the joint obligors, he thereby instantly releases the other joint obligors, independent of whether or not he knew the legal effect of his act.

APPEAL by the defendant, the Citizens' National Bank of Corry, Pa., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cattaraugus on the 20th day of April, 1903, upon the decision of the court rendered after a trial at the Cattaraugus Special Term.

This is an action in equity, and was commenced on the 10th day of September, 1900, to perpetually restrain the prosecution of an action at law pending in the Supreme Court, originally brought by the defendant against the plaintiff's testator and others. The judgment granted the relief asked for, and from it this appeal is taken.

*Alexander Wentworth* and *A. B. Osborne.* for the appellant.

*James H. Waring,* for the respondent.

McLENNAN, P. J.:

The facts are not in dispute. The appellant is a national bank, having its place of business in Corry, Penn. For many years prior to January 5, 1892, Abijah Weston, Orrin Weston and William W. Weston were extensively engaged in the lumber business as copartners, under the firm name of " Weston Brothers." On the 6th day of December, 1891, William W. Weston assumed to make the promissory note of said firm for $3,179.27, payable to the order of one G. E. Ramsey, and signed it " Weston Brothers." The note was indorsed by the payee, by S. S. Ramsey and by W. H. & D. C. Conklin, who were also copartners, and was transferred to the defendant bank in the regular course of business, before maturity. The note not having been paid, the defendant bank, in December, 1893, commenced an action in the Supreme Court against all the parties to it to enforce its collection. In that action all the defendants made default except Abijah Weston and Orrin Weston, who answered and alleged that the copartnership of Weston Brothers had been dissolved more than a year before the note was issued; that it was fraudulently issued by William W. Weston, and not in and about the business of the firm; that it was given without con-

sideration, and that the plaintiff had notice of all of said facts when it became the owner of the note. On December 29, 1893, and after the answer referred to had been served by Abijah and Orrin Weston, the attorneys for the defendant bank, the plaintiff in that action, upon the usual affidavit of default, obtained an order severing the action, and judgment was entered against the non-answering defendants, including said William W. Weston. On January 2, 1894, such judgment was docketed in Cattaraugus county, and an execution delivered to the sheriff of said county, who, on the 9th day of January, 1894, returned the same *nulla bona.* On the fifteenth day of February following the attorney for the defendant bank made an application to the court, in the action brought upon the note, to vacate and set aside said judgment as against the said William W. Weston, on the ground that it was entered by inadvertence or mistake. The court granted the order and the judgment as against William W. Weston was vacated and set aside, without notice to Abijah and Orrin Weston, the answering defendants in that action.

Six days before the order vacating the judgment entered against William W. Weston was obtained, Abijah and Orrin Weston made a motion at Special Term for leave to file and serve a supplemental answer, setting up the entry of judgment against William W. Weston. Upon the hearing of that motion affidavits were presented on behalf of the bank, tending to show that the judgment against William W. Weston was entered inadvertently and by mistake, and the order vacating said judgment as against William W. Weston was also presented upon said motion. The answering defendants Abijah and Orrin Weston were then fully informed that such order had been made and of its contents. The motion for leave to serve a supplemental answer was denied. An appeal was taken from that order to the General Term, and it was in all things affirmed.

During the pendency of the appeal from the order refusing permission to serve a supplemental answer, or soon after the decision of the General Term, Orrin Weston died. The case was then brought to trial as against Abijah Weston; a verdict was rendered in his favor upon the issues raised by the original pleadings in the action, and judgment was entered accordingly. The defendant bank, the plaintiff in that action, appealed from said judgment to

the Appellate Division, where it was in all things affirmed. (*Citizens' National Bank* v. *Weston*, 19 App. Div. 627.) An appeal was then taken to the Court of Appeals, where the judgment was reversed and a new trial granted (162 N. Y. 113). Abijah Weston died while the appeal was pending in the Court of Appeals, leaving a last will and testament, of which the plaintiff is executor, and an order was duly made substituting the plaintiff as defendant in place of Abijah Weston, deceased.

The defendant bank then undertook to prosecute to final judgment the action brought by it to enforce the collection of the note above referred to. This action was then brought and an injunction obtained restraining the defendant from taking any steps in the prosecution of that action during the pendency of this. The action was tried before the court without a jury in June, 1902, and final judgment rendered forever restraining and enjoining the defendant from prosecuting the action brought by it on the promissory note.

The affirmance of the judgment appealed from necessarily involves holding that by the order of the Special Term made in the action brought upon the promissory note in question, Abijah and Orrin Weston, the answering defendants in that action, were improperly denied permission to set up, by supplemental answer, the fact that the plaintiff had entered judgment against William W. Weston, who, as alleged in the complaint, was jointly liable with such answering defendants, and was not liable in any other way; that such order was improperly affirmed by the General Term, and that thereby Abijah and Orrin Weston were prevented from interposing a valid and legal defense, existing in their favor, to any claim which the plaintiff had against them on account of such note. Clearly the motion to serve a supplemental answer was properly denied, if the Special Term had the power to make and was justified in making the order of February 15, 1894, which in terms vacated and set aside the judgment entered against William W. Weston. If no such judgment in fact existed at the time the motion for leave to set it up by supplemental answer was heard, the motion should not have been granted.

In the order vacating and setting aside the judgment entered against William W. Weston it was recited:

" * * * And it appearing that an order of severance in said action was made by the clerk of Erie County under section 456 of the Code of Civil Procedure, and that by mistake or inadvertence the name of the defendant William W. Weston was included in the said order, a judgment was thereby directed against him as well as the defendants Ramsey, W. H. and D. C. Conklin, and that such order as to the defendant William W. Weston was made without jurisdiction and improperly granted, as there was no several liability alleged in the complaint of said action as against the defendant William W. Weston. Now, on motion of Martin Clark, of counsel for said plaintiff,

" It is ordered that said order of severance in said action, made on the 29th day of December, 1893, by the clerk of Erie County, be modified in so far as it permits judgment therein to be taken against the defendant William W. Weston, and that the judgment entered in said action pursuant to said order against William W. Weston, be vacated and set aside, in so far as it directs judgment in favor of the plaintiff against the defendant William W. Weston; and the clerk of Erie County be and he is hereby authorized and directed, upon the entry of this order, to mark the docket or dockets in his office wherein said judgment appears against William W. Weston with proper reference to this order."

Upon the appeal from the order denying the motion for leave to serve a supplemental answer, the General Term said (*Citizens' National Bank* v. *Weston*, 81 Hun, 84, 86): " But we think the motion was properly denied, because the inclusion of the defendant William Weston in the entry of the judgment was merely inadvertent, and the judgment against him was vacated as soon as the mistake was discovered and before any prejudice to the other defendants, the appellants here, could have resulted therefrom."

The fact should not be overlooked that the judgment entered against William W. Weston was thus entered through inadvertence and mistake, and for that reason was vacated, as appears by the order vacating the same, and that such mistake was, in effect, held by the General Term to be a sufficient ground for vacating the same.

We think the finding in the case at bar, to the effect that such judgment was not entered by mistake and inadvertence, cannot be

held to be effective for any purpose as against the recitals in the order which was affirmed by the General Term; neither do we regard it of consequence for the purposes of this action that the order vacating the judgment entered against William W. Weston was obtained without notice to Abijah and Orrin Weston. They had notice of such order within a few days after it was made; they took no steps to vacate it because it had been granted *ex parte;* did not appeal from it, and proceeded with the trial of the case upon the theory that such judgment had been vacated. We think it is now too late for them to raise the question for the first time that such judgment was vacated without notice to them. If the court had jurisdiction to make the order the failure to give notice of the motion was simply an irregularity, and is not available to the plaintiff in this action for the purpose of sustaining the proposition that the order vacating the judgment against William W. Weston was void.

We may assume — as is conceded by appellant's counsel — that if a plaintiff in an action brought against several defendants to recover an indebtedness for which they are jointly liable enters judgment against one of them for such indebtedness, the others are discharged from all obligation as to such joint indebtedness while the judgment so entered remains in force. (*Candee* v. *Smith,* 93 N. Y. 349; *Heckemann* v. *Young,* 134 id. 170.) And also that if the plaintiff in such an action, of his own volition, elects to prosecute one of several joint obligors and proceeds to judgment against him the obligation as to all of the others becomes thereupon merged in the judgment and no right of action survives against any of them. (*Candee* v. *Smith, supra.*)

In view of the rule stated it is unquestionably true that the plaintiff in an action brought upon a joint obligation who deliberately and intentionally takes judgment against one of them instantly releases the other joint obligors, and this must be true independent of whether or not such plaintiff knew the legal effect of his act.

That, however, is not the case presented by this appeal. The appellant had a perfect right to take judgment against one class of defendants without impairing its right to prosecute the action to final judgment against the other class, to wit, the Weston Brothers, who were joint obligors. When entering judgment against the

defendants who were not thus jointly liable, defendant's attorney, by mistake and inadvertence, included the name of one defendant who was jointly liable as a copartner. Immediately upon discovering the mistake, and before any one had been prejudiced thereby, it sought to be relieved therefrom and to have the judgment corrected by striking the name of William W. Weston, such joint obligor, from the same. Had the court power to grant such relief?

The general rule may be stated to be that courts always have control over their own proceedings, and where there is no express prohibition may deal with them so that what is just and right may be reached. (*Matter of City of Buffalo,* 78 N. Y. 362.)

The court has power, independent of statute, to modify, vacate and set aside its orders and judgments, and may exercise it in behalf of one in whose favor the order or judgment was entered. (*Dietz* v. *Farish,* 43 N. Y. Super. Ct. 87; *National Broadway Bank* v. *Hitch,* 66 Hun, 401.)

It was held in *Dinsmore* v. *Adams* (48 How. Pr. 274; 66 N. Y. 618) that the court has control over its judgments, and will vacate them whenever they have been improperly obtained; that such power is inherent and not limited by section 174 of the Code of Procedure, which is substantially re-enacted in section 724 of the Code of Civil Procedure.

Many other cases might be cited to the same effect, and holding that the court has inherent power to vacate, modify or correct its judgments, except such power is limited by statute, and the only limitation which has thus been imposed is that a motion to vacate, modify or correct must be made within one year, as provided in section 1282 of the Code of Civil Procedure.

In *Hatch* v. *Central National Bank* (78 N. Y. 487) it was held that after the satisfaction of a judgment in favor of the plaintiff, it is within the discretion of the court to vacate it and to amend the complaint by adding new causes of action, although by so doing the Statute of Limitations is avoided. In that case the court said: "In *Deane* v. *O'Brien* (13 Abb. Pr. R. 11) the plaintiff was allowed to amend by enlarging his cause of action, although he thus avoided the Statute of Limitations, and 'it might affect third parties.' These (and there are many other) cases show the power of the court over its own judgments, and its habit to exercise it in aid of justice.

It is an inherent power, and not limited in matters of substance by the sections of the Code."

In *Vanderbilt* v. *Schreyer* (81 N. Y. 646) the plaintiff brought an action to set aside certain conveyances, because fraudulent and void. The defendant Schreyer demurred to the complaint. The issue upon the demurrer was brought to trial and the demurrer was overruled, with liberty to the defendant Schreyer to answer. He did not answer, and judgment was entered against him. A few days after the entry of such judgment an order was made severing the action as between the plaintiff and Schreyer individually from the action between the plaintiff and the other defendants, and allowing the plaintiff to proceed with the action against the other defendants. Schreyer in due time appealed to the General Term from the judgment entered against him. (21 Hun, 537.) Thereafter the plaintiff claimed that the judgment against Schreyer was conclusive against the other defendants, and by permission of the court was allowed to serve a supplemental complaint upon the other defendants, setting up such judgment. Upon motion Schreyer was permitted to discontinue his appeal; to open the judgment obtained against him; to withdraw his demurrer and to answer, upon the payment by him of certain costs. It was urged that the court below did not have power to make the order vacating the judgment. The Court of Appeals (p. 648) said : " The power of the Supreme Court to open defaults, to set aside or vacate judgments, and to permit pleadings to be served, in furtherance of the ends of justice, is unquestionable. It is a power exercised continually, and grows out of the control it has over its own records and judgments and the actions pending therein. There are so many occasions for its exercise that it should not be curtailed. Whether the power shall be exercised in any case rests in its discretion, with the exercise of which this court will not ordinarily interfere. The power does not depend upon section 724 of the Code, but it exists independently of that, and inheres in the very constitution of the court. A judgment entered upon demurrer is no more sacred or final than any other final judgment, and may be relieved against with as much propriety as any other. (*Fisher* v. *Gould, ante,* p. 228.\*) The power must not be arbitrarily exercised,

\* 81 N. Y. 228.

so as to deprive a party of a valuable right secured.  But when facts exist showing that the ends of justice may require its exercise the Supreme Court must deal with its own records, generally subject to no review here."

We can discover no distinction in principle between the case last referred to and the one at bar.  In this case the defendant by entering the judgment in question was deprived of an important right by an act done through its attorney, not, as found by the Special Term, designedly or intentionally, but through mistake and inadventence.  Immediately upon discovering such mistake it asked the court to relieve it from the effects of such act by vacating and setting aside the judgment which it had entered.  Being satisfied that the judgment was entered through mistake and inadvertence, we think the court had ample power to vacate it and was justified in so doing.  The respondent, by reason of such mistake, was led to do no act except to seek to take advantage of such mistake.  All of the defenses available before the mistake were equally so after its correction.  In fact, the defendants in the action, Abijah and Orrin Weston, had denied under oath that they were joint obligors with William W. Weston upon the note, but when the plaintiff through mistake had entered judgment against William W. Weston, they then sought to claim that they were jointly indebted upon the note with him; desired to change the position which they had originally taken, and which, when the action was subsequently tried, was found to be correct by the trial court and the Appellate Division, and judgment dismissing the plaintiff's complaint and in favor of the defendant Abijah Weston was rendered. When the Court of Appeals, however, determined that the defenses set up in the original answer could not be maintained by those defendants in that action, they seek by this action to compel the defendant bank to stand by its act in entering judgment against William W. Weston, although the Special Term and General Term have declared that such act was the result of mistake and inadvertence, and done under such circumstances that the bank was equitably entitled to be relieved from the effects thereof.

We refer to these circumstances for the purpose of suggesting that, as appears to us, there are no equities existing in favor of the respondent which call upon a court of equity to exercise the extra-

ordinary power of restraining an action at law, even if such power exists upon the facts disclosed by the record before us. Without, however, passing upon that question, having concluded that the Special Term had the power (and properly exercised it) to vacate the judgment entered against William W. Weston as by default, it having been thus entered through mistake and inadvertence, and, therefore, that it was justified in denying defendant's motion, made in that action, for leave to serve a supplemental answer setting up as a defense the entry of said judgment, it follows that the judgment appealed from should reversed and a new trial granted, with costs to the appellant to abide event.

All concurred.

Judgment reversed, new trial ordered, with costs to appellant to abide event, upon questions of law only, the facts having been examined and no error found therein.